THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* B. HOLTZMAN, Plaintiff in Error.

*Opinion filed April 20, 1916.*

1. CRIMINAL LAW—*what essential to information for obtaining credit by false representations.* It is essential to an information charging the obtaining of credit and money by means of false representations, in violation of section 97 of the Criminal Code, that there be an allegation that the party extending the credit and loaning the money was defrauded of his money or goods; and the omission of such allegation is not cured by verdict.

2. SAME—*what is not ground for a conviction for obtaining credit and money by false representations.* The fact that the defendant, in making a written statement for the purpose of obtaining credit and money, failed to schedule, as liabilities, two notes on which he was liable, is not ground for a conviction under section 97 of the Criminal Code, where, so far as the evidence shows, defendant is not insolvent and has ample means to pay all debts.

WRIT OF ERROR to the Branch "D" Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. EDMUND K. JARECKI, Judge, presiding.

O. J. C. WRAY, for plaintiff in error.

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, and GEORGE P. RAMSEY, (EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Ben Holtzman, was convicted in the municipal court of Chicago on an information under section 97 of the Criminal Code and sentenced to serve a term of thirty days in jail and to pay a fine of $500. The judgment and sentence of the court were affirmed by the Appellate Court, and a writ of error has been sued out of this court to review the judgment of the Appellate Court.

The charging part of the information is in the following words: "That B. Holtzman, late of the city of Chicago, heretofore, to-wit, on the 23d day of March, A. D. 1914, at the city of Chicago aforesaid, did knowingly and fraudulently make a false representation in writing signed by him concerning his respectability, wealth, mercantile correspondence and connections, assets and liabilities, and fraudulently obtained thereon credit and divers sums of money, to-wit, eleven hundred ($1100) dollars, from the Michigan Avenue Trust Company, a corporation, contrary to the form of the statute," etc.

Said section 97 provides: "Whoever, by any false representation in writing, signed by him, of the respectability, wealth, mercantile correspondence or connections, or assets or liabilities of himself or of any firm of which he is a member, * * * obtains credit for himself [or] for such firm, * * * and thereby defrauds any person of money, goods, chattels or any valuable thing, * * * shall be sentenced to return the money or property so fraudulently obtained, if it can be done, and shall be fined not exceeding $2000 and confined in the county jail not exceeding one year." .

To secure a conviction under this section it is necessary for the State to prove that the defendant made and signed such a false representation in writing for the purpose of inducing the party defrauded to sell him goods or chattels or to loan him money on a credit; that such defrauded party relied upon and believed the representation and was deceived thereby, and by reason thereof was induced to and did sell him goods or chattels or loan him money on credit; that the defendant was not worth the amount represented by the instrument in writing over and above his liabilities, but was, in fact, insolvent and not worth enough to pay his debts, and that he knew the representations made by him were false; that he has not paid for the goods and chattels or has not re-paid the money loaned to him and is unable

financially so to do, and that by means of the false represen-
tations and the obtaining of the credit he defrauded said
party of his goods or chattels or money.   Moore on Crim.
Law, (2d ed.) sec. 590.

The proof in this case discloses that plaintiff in error,
for the purpose of obtaining a loan of $500 from the said
trust company, on March 23, 1914, signed a written state-
ment and presented it to the trust company, in which he
listed as his assets merchandise, bills receivable, cash and
personal property at a valuation of $4600, and as his total
liabilities, "bills payable to banks, $600." The proof fur-
ther shows that he failed to list as liabilities a note signed
by him to the State Bank of Italy as accommodation for
his son and a $400 note to one of his neighbors for money
borrowed for himself March 2, 1914, three weeks prior to
the $500 loan in question to him, on which $400 note judg-
ment by confession was taken June 18, 1914.   Including
the $900 in notes not listed by him as liabilities, his state-
ment, if true, shows that he had assets of the value of $4600
with which to pay the $1500 of total liabilities proved, and
plaintiff in error testified that he had all the property sched-
uled by him, and that the reason he failed to list the $400
note was that he forgot it entirely and that he did not list
the $500 note because it was his son's liability, and that he
told the representative of the trust company of the exist-
ence of the $500 note on March 23, 1914, before he got the
$500 loan in question, which latter statement was denied by
the bank's agent.   There is not one iota of evidence in this
record that the property of plaintiff in error listed to the
trust company is not of the value of $4600, or that he had
disposed of any of it since March 23, 1914, or that anyone
had sold it or levied on it for other debts of plaintiff in er-
ror, or that plaintiff in error is insolvent and unable to pay
the trust company the $500 loan.   The evidence does show
that he owed the trust company the $600 listed by him as
liabilities, or $1100 in all, and that when the trust company

272 — 29

learned that judgment was taken on the $400 note, it credited on "his indebtedness" to it the amount of his deposit with it, $146.26. The reliance for a conviction in this case is the proof that he failed to schedule the two notes among his liabilities, amounting to $900; that the $500 borrowed of the trust company, less said credit, is still due and unpaid; that there is a judgment on the $400 note, and that the $500 note to the State Bank of Italy was paid by plaintiff in error by reason of his son's insolvency.

The evidence is wholly insufficient to sustain the judgment of the court, as contended by plaintiff in error, because it fails to prove that the trust company was defrauded of the $500 loaned to plaintiff in error or of any part of it. So far as this evidence shows, plaintiff in error is not insolvent and has ample means to pay all his debts. Defraud, within the meaning of said section of the statute, means to deprive one of a property right by deception. (Anderson's Law Dict. 474.) "When the word 'defraud' is used it necessarily implies that advantage comes to the party defrauding and corresponding damage to the party who is defrauded." (*United States* v. *Lee,* 12 Fed. Rep. 816.) If plaintiff in error had paid the trust company in full it would not have been defrauded. So, also, if plaintiff in error is shown to have plenty of property to pay all he owes, including the trust company loan, the trust company is not proven to have been defrauded.

It necessarily follows from what has heretofore been said in this opinion, that the information is insufficient to sustain the judgment of the court. The information does not charge that the trust company was defrauded of its money. It does not set out the instrument *in hæc verba* nor the material parts of it, and omits other allegations necessary to make it a good information if attacked by motion to quash it. No motion was made to quash it, but it is bad even after verdict on the motion to arrest the judgment. This case clearly indicates the results that are likely to hap-

pen in any case by loose and slip-shod methods in pleading. If this information had contained the proper allegations and had been proved on the trial there doubtless would have been no necessity for a review of the judgment in this court and a new trial of the cause. The said section of Moore on Criminal Law above cited indicates fully the proper allegations of an information or an indictment under said section.

The judgments of the municipal court and of the Appellate Court are reversed and the cause is remanded, and the State should be permitted to amend the information if it so desires.                    *Reversed and remanded.*