(No. 32139.— ■■■■■■■■)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH KHAMIS, Plaintiff in Error.

*Opinion filed November 27, 1951—Rehearing denied Jan. 21, 1952.*

EPSTEIN & EPSTEIN, of Chicago, (RITA IVY EPSTEIN, and JOSEPH L. GOLDBERG, of counsel,) for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR F. MANNING, and WILLIAM J. MCGAH, JR., all of Chicago, of counsel,) for the People.

Mr. JUSTICE FULTON delivered the opinion of the court:

The defendant, Joseph Khamis, brings a writ of error seeking to reverse the judgment of the criminal court of Cook County sentencing him to the Illinois State Penitentiary for a term of not less than one year and not more than ten years, based on the verdict of a jury finding him guilty of abortion. The indictment was in two counts. Count I charged that the defendant did on July 10, 1950, use a certain rubber tube and force the same into the womb of Rose Goulding, causing an abortion. Count II charged that the defendant did on July 10, 1950, use a certain rubber tube and certain other substances, namely cotton and gauze, which he thrust into the body of the said Rose Goulding, causing an abortion.

By this appeal the defendant contends that the State failed to prove the defendant guilty of the crime of abor-

tion beyond a reasonable doubt because the State did not show that the alleged conduct by the defendant did produce the abortion. He next contends that at most, the proof shows he is guilty of attempting to produce an abortion and there is a fatal variance between the indictment and the proof, and that, therefore, the case must be reversed. He further contends that the court committed error in refusing to grant the following instruction tendered at his request: "The Court instructs the jury that if they believe from the evidence that the complainant is shielding someone, other than the defendant, as the one who performed the abortion, you are to find the defendant not guilty."

Rose Goulding, a married woman of about 40 years of age went to see her family physician shortly after June 1, 1950. He examined her and gave his opinion that she was pregnant approximately two to two and one-half months. He turned her over to an obstetrician who examined her on two occasions confirming the pregnancy and finding that there were no abnormalities and that she was in good health.

Mrs. Goulding and her husband testified that they visited the office of Dr. Khamis on two occasions, July 7, 1950, and July 10, 1950. She testified that on July 7 she told Dr. Khamis that she was pregnant and asked him if he could do something for her, to which he answered that he could and that it would cost her $250. On July 10, Mrs. Goulding withdrew $245 from her account at the Liberty National Bank of Chicago, and at about 5:00 P.M. on that date she went to Dr. Khamis' office accompanied by her husband. She testified that she paid him the $245 and at his suggestion made arrangements by telephone for a room at the Dearborn Plaza Hotel. She testified that she then got on the operating table and that she noticed the defendant take a rubber tube about 12 to 14 inches long and insert the same into her vagina. After about 40 minutes he started to pack her with cotton. She then got

down from the table and the defendant gave her three pills to take in a glass of water. She then left his office and went to the Dearborn Plaza Hotel where she registered and stayed the night. At 8:00 o'clock the next morning the defendant came to her hotel room. He asked her if anything had happened yet and she replied no, and he then told her to keep on taking the pills he had given her in his office, which she did. The defendant returned to the hotel room about 3:00 o'clock that afternoon while her husband was visiting her. The defendant inquired if anything had happened and she informed him no, and he told her to keep on taking the pills and to walk around and get exercise. The defendant then returned at 11:00 o'clock that night and inquired as to her condition and she stated that nothing had happened and that she was feeling very sick. He remained with her that night and told her to keep walking up and down and to get lots of exercise. At about 4:00 A.M. he asked her if anything had happened and she said no. He then told her to go into the bathroom and there he proceeded to pull out the packing and the rubber tubing. At about 6:00 A.M. he left, telling her he was going out for some medicine. Mrs. Goulding then telephoned her husband and the husband came and got her and she went right home to bed. Her family doctor was called and he came and attended her, giving her an injection of penicillin. At about 6:00 P.M. the family physician returned and placed her in the hospital. She remained in the hospital approximately 24 hours when she started to have labor pains and delivered a foetus. She began hemorrhaging badly and was taken to the operating room. While in the operating room before any surgery could be performed she delivered another foetus.

Mr. Goulding testfiied that he accompanied his wife to the defendant's office on the two occasions but that he did not know what happened in the private office of the defendant. He further testified to taking his wife to the

Dearborn Plaza Hotel on July 10 after she had been at the defendant's office. He testified to a visit by the defendant to the hotel room on the afternoon of July 11 and testified that he came and got his wife pursuant to her telephone call on the morning of July 12. Both Mr. and Mrs. Goulding testified that she did not buy or use any drugs to bring about an abortion and that her condition was quite normal except that at times during the very early stages of the pregnancy she complained of occasional "spotting" or passing of blood from her vaginal tract.

The family physician testified, as did the obstetrician. The resident physician of the Mt. Sinai Hospital, where Mrs. Goulding was hospitalized after this occurrence, testified that he examined her on July 12, 1950, at about 9:00 P.M. At that time he noticed that the cervix had a puncture mark in it on the interior lip. He stated that he had seen such a puncture mark on patients before. When the witness was asked his opinion as to what usually caused such a puncture mark, the defendant's counsel objected and the objection was sustained.

The defendant testified that he was 71 years of age and had been practicing medicine in Chicago for 41 years. He stated that he treated Mrs. Goulding in the month of July, 1950, for a mucous and bloody discharge by using an antiseptic on the outside. He denied that he at any time inserted a rubber tube into her private parts and he denied that he packed her with gauze and cotton at any time. He further denied that he visited her at the Dearborn Plaza Hotel on the night in question or at any other time. Likewise, he denied that he performed an abortion on her.

The defendant contends that the State has failed to prove that any of the alleged acts by Dr. Khamis did cause or tend to cause an abortion. He urges that it was necessary for the State to submit proof that the alleged acts of which he is charged caused or tended to cause the abortion.

He also contends that in view of the lapse of time from the alleged acts until the expulsion of the two foetuses there is no causal connection between the alleged acts performed and the abortion. He further argues that three doctors testified on behalf of the State and yet not a single doctor testified or was asked to testify whether or not the insertion of the rubber tube would cause, or tend to cause, the abortion. The defendant relies heavily upon the case of *People* v. *Peyser*, 380 Ill. 404, wherein this court held that it was necessary for the State to prove that the complaining witness was, in fact, pregnant at the time of the abortion. In that case we stated, "We do not believe the fact the prosecutrix stated that she was pregnant, unaccompanied by corroboration, is proof beyond a reasonable doubt." From this case defendant argues that since pregnancy is a matter upon which this court requires more proof than just the statement by the complaining witness, certainly whether or not the insertion of a catheter or other foreign body into the private parts of a female would cause an abortion is a matter which must be proved by expert testimony, since a layman could not be expected to readily know whether or not the insertion of such objects into the private parts would cause an abortion. In the *Peyser case* there was no corroboration of the fact of pregnancy other than the testimony by the prosecuting witness. In the case at bar, there is considerable corroborating testimony. There is testimony by two physicians and her own husband that the woman was pregnant. There is testimony by the husband that he accompanied his wife on the two occasions to the defendant's office and that he was present at the time the subject matter of the abortion was discussed with the defendant. Furthermore, it appears that Mrs. Goulding actually withdrew the sum of $245 from the bank on the day of the abortion. Likewise, there is testimony by the husband corroborating that of his wife that he was present in the hotel room at the time the de-

fendant came and checked regarding Mrs. Goulding's condition after the alleged operation. From this record it appears that there is corroboration that the woman was pregnant, that she went to the defendant's office to have him perform an abortion, that he, in fact, did perform acts with reference to her which, at least, punctured her cervix, and by his subsequent conduct indicated that he had performed or attempted to perform an abortion. The only question which would remain would be whether or not the acts which he performed did cause, or might cause, the subsequent miscarriage about 48 hours later. While it is true that there is no proof by expert testimony indicating that the acts performed did or could tend to cause the miscarriage, the testimony is complete that nothing was done by Mrs. Goulding, after the acts alleged to have been performed. by the defendant, which would cause, or tend to cause, an abortion. If the defendant's theory is adopted by this court, the State must prove that a miscarriage occurring subsequent to such acts as were performed in this case was not caused by anything other than the acts. We believe that such a requirement would be to require the State to assume too great a burden in cases of this sort. We believe that the trial court properly held that it was a question for the jury to determine whether or not the acts complained of caused, or tended to cause, the abortion. The cases of *People* v. *Mann,* 370 Ill. 123; *People* v. *Hobbs,* 297 Ill. 399, and *People* v. *Hagenow,* 236 Ill. 514, cited by the defendant, are all cases where the victim of the abortion died and, therefore, it was necessary to introduce expert testimony by surgeons who had examined the deceased to give evidence showing that an abortion had been committed. Where the prosecuting witness is living, where her testimony is corroborated as it was in the case at bar, and where, in fact, she did abort and there is no showing that the abortion was caused or could be caused by anything other than the alleged misconduct, we do not

believe that medical testimony as to the alleged acts being capable of causing the abortion is necessary.

We, therefore, hold that it was within the province of the jury to decide whether or not the alleged acts of the defendant were committed and whether or not they caused or tended to cause the abortion.

In view of our determination of the first argument made by the defendant we shall not consider his contention that there is a fatal variance between the indictment and the proof, since we hold that the proof was sufficient to show the defendant guilty of committing an abortion.

The defendant contends that the instruction which he tendered as shown above should have been given because it was his theory of defense that, if an abortion was performed, it was performed by someone other than him and that the complainant was shielding that person. The law of this State with reference to instructions to juries in criminal cases was stated in the case of *People* v. *Scalisi*, 324 Ill. 131, at page 145, "Plaintiffs in error were entitled to have the jury instructed not only as to the law applicable to the state of facts testified to by them, but applicable to any state of facts which the jury might legitimately find from the evidence to have been proven. A defendant is entitled to the benefit of any defense shown by the entire evidence, even if the facts on which such defense is based are inconsistent with the defendant's own testimony." Subsequently we have held that this court does not weigh the evidence upon a question of whether an instruction is proper on a certain theory, but that very slight evidence upon a given theory of a case will justify the giving of an instruction. *People* v. *Matter*, 371 Ill. 333; *People* v. *Papas*, 381 Ill. 90; *People* v. *Grizzel*, 382 Ill. 11.

Upon cross-examination Rose Goulding stated that she and her husband went to a Dr. Smuk's office for the purpose of having an abortion performed on her prior to the time she went to defendant. Mrs. Goulding testified that

she was referred to the defendant by Dr. Smuk. When asked for the full name of Dr. Smuk she did not know, nor did she know where his office was except that it was on the north side of Chicago. She stated that she told her husband that she wanted to go to Dr. Smuk's office so that he could perform an abortion on her.

On cross-examination Mr. Goulding first denied that he had been to see Dr. Smuk with his wife and denied that he had gone there with his wife for the purpose of having Dr. Smuk perform an abortion, but, on further examination, admitted having seen Dr. Smuk with his wife. No evidence was presented by the defendant tending to show the abortion having been committed by someone else except this evidence elicited upon cross-examination.

In order for a jury to have found the defendant not guilty on this theory, it would have been necessary for the jury to have disbelieved all of the testimony of Mr. and Mrs. Goulding as to their dealings with the defendant and to have believed the defendant's story. The fact that Mr. Goulding either did not recall the visit to Dr. Smuk or did not choose to mention the same might cast some doubt as to his credibility, but a careful review of the cross-examination of Mrs. Goulding does not indicate that she attempted to conceal this fact. Defendant's only theory of defense was that he treated her for an infection. The cause of the infection was not necessarily material. Defendant's instruction No. 8 given by the court is as follows: "The court instructs the jury that if they find from the evidence that the complainant was having a discharge from her uterus at the time she visited the defendant, and that the defendant treated her for that condition, then you are to find the defendant not guilty." This covered the theory of the defendant, since the alleged infection was either caused by someone attempting to cause Mrs. Goulding to abort or her pregnancy was such as to cause the infection. The refused instruction did nothing more than tell the

jurors that if they thought someone else had performed the abortion, they should find the defendant not guilty. Given instructions No. 2 and No. 6 told the jury that before it could find the defendant guilty it must find that the defendant committed the acts charged beyond all reasonable doubt. We, therefore, believe that the jury was instructed on all theories of defense, and the refusing of the instruction complained of was not erroneous.

For the reasons stated in this opinion, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*