THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SIDNEY EVERETT, Defendant-Appellant.

(No. 56951;

First District (5th Division)—September 7, 1973.

Jay I. Messinger and Anthony J. Pauletto, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis, Barry Rand Elden, and Albert Rosendahl, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

OFFENSES CHARGED

Deceptive practice (three charges). Ill. Rev. Stat. 1969, ch. 38, par. 17—1d.

JUDGMENT

After dismissal of two charges of deceptive practice because of their failure to allege intent to defraud, a jury found defendant guilty of the remaining charge, judgment was entered, and he was sentenced to five months' imprisonment.

CONTENTIONS RAISED ON APPEAL

1. Defendant was not proved guilty beyond a reasonable doubt.

2. Defendant was denied a fair trial because of improperly admitted evidence and improper instructions.

EVIDENCE

*Sylvia Reynolds,* for the State:

She and her husband were the owners and operators of a tavern at 2834 W. Fullerton in Chicago. On June 4, 1970, between 9:00 and

10:30 P.M., defendant, Sidney Everett, approached her in the tavern and asked her to cash a payroll check in the amount of $95.57 payable to Robert W. King and endorsed to defendant and also endorsed by defendant. She never talked with King, but later she learned that her husband had. Defendant received $45.57 on the check that evening and $50 the next day. About a week later, the check was returned, marked "Account Closed." About three or four days later, she saw defendant and told him she heard he was passing out bad checks. Defendant replied the check was good and he would make it good if it was not. Later, defendant rang her doorbell at 2:30 A.M. and wanted the check back but didn't have the money. He grabbed her when she wouldn't give it back, but she broke away. He promised to pay her again shortly after she saw him at the police station. When he didn't, the police picked him up again.

*Wilburn Reynolds,* for the State:

On June 4, 1970, he saw defendant in the witness' tavern after defendant had asked the witness' wife to cash a payroll check for $95.57. He cashed part of it that night and part the next morning. Before the check was returned, he saw defendant at the Landmark Tavern and defendant said he had been looking for him to inform him that the check he cashed was not good, and to ask him not to send anyone looking for him. The witness replied it hadn't come back yet. The next Friday, when the check came back, he found defendant at the same tavern, called the police, and they took him to the station. Defendant promised to pay by Monday and, when he didn't pay, the witness called the police again and had him arrested. Defendant never paid the check.

*Jimmie Monroe,* for the State:

On May 28, 1970, he was an attendant at a Martin Oil gas station at 3248 W. Fullerton. At about 8:00 P.M., he cashed a check for defendant after getting approval from another employee.

*Fred Green,* for the State:

He owned the Martin Oil station at 3248 W. Fullerton in Chicago. On May 28, 1970, he walked into the station as defendant was leaving. He saw the check defendant had just cashed and saw it when it came back from the bank, marked "Account Closed." Two days after the check came back, defendant came in and said he would come in later to pick up the check. When he didn't return, the witness signed a complaint.

*Glen Wrey,* for the State:

On May 28, 1970, at approximately 7:00 P.M., he saw defendant in the Landmark Tavern when he was asked by defendant to cash a $79.59 check made out to Richard Walters. He did so and the check was returned, marked "Account Closed." When he saw defendant later at the

same tavern, defendant said he would make the check good but never did. Defendant's name or signature did not appear at any place on the check.

*Robert King,** for the defendant:

He gave defendant the check dated June 4, 1970, payable to himself, and asked defendant to cash it for him without telling defendant whether the check was good or bad. Defendant gave him all of the proceeds from the check. Sometime after June 4, 1970, the witness told Reynolds that he knew the check was no good and promised to make restitution. The June 4, 1970 check was a check of Tilt Sash Corporation. He filled it in with his own name and the amount. He had never worked for that company. He got only one check and didn't tell defendant where it had come from. It was already filled in when he gave it to defendant.

*Sidney Everett,* on his own behalf:

He endorsed the check and cashed it at the Reynolds' tavern after receiving the completed check from Robert King without knowing the account was closed. He gave King all of the proceeds. When he was informed the check was no good, he brought King to the Reynoldses and heard King tell Reynolds the check would be taken care of. He never demanded the check back from Reynolds.

He received the May 28, 1970 check for $100 from Lawrence Stash for tree trimming he had done. He saw Stash fill out the check to him. He didn't know Stash's account was closed when he cashed the check at Green's service station the same day he had received it from Stash. He found out it was not good about a week or ten days later. When he found out, he offered to make the check good, and even offered to work part time to pay it back. He had been to that service station 30 to 40 times before. He tried to find Stash, but he had moved to Wisconsin.

He denied asking Wrey to cash a $79.59 check for him on May 28, 1970, at the Landmark Tavern. He knew Wrey and when he talked with him later, he said Wrey told him he [Wrey] was looking for Richard Walters, the payee on the check. He had never seen Richard Walters in his life and had never worked at the Tilt Sash Corp.

*Walter Quinlan,* for the State:

He had been a Chicago police officer for 29 years. On July 20, 1970, at the area headquarters and at a tavern, he had two conversations with King in the presence of another officer and Mr. and Mrs. Reynolds wherein King said Everett was present when the check cashed at Rey-

---

* King was also charged with deceptive practice regarding the Reynolds check. He was tried after defendant herein. He pleaded guilty and was granted probation, making restitution to Reynolds.

nolds' tavern was filled out and that it was defendant who supplied the check.

*Robert King*, recalled on surrebuttal for the defendant:

He did tell Officer Quinlan that defendant was present when he [the witness] filled in the check, and may have said defendant had given him the check, but, in fact, defendant was not present and had not supplied the check. He had said those things only to have the police go easy on him and to avoid jail himself.

The charges relating to the checks cashed by Green and Wrey were dismissed, so the only charge involved in this appeal concerns the check cashed by Reynolds.

OPINION

First, defendant contends that he was not proved guilty beyond a reasonable doubt because the State failed to introduce any evidence of defendant's intent to defraud Reynolds, defendant having testified that the check was complete when received by him from King and that he knew nothing of its invalidity at the time he got Reynolds to cash it. Defendant's argument is grounded on the proposition that Officer Quinlan's testimony to the effect that King told him defendant had supplied him with the blank check of Tilt Sash and was present when the check was filled in, is impeachment testimony only which cannot be used to prove a substantive element of the crime. However, that testimony, which King in his surrebuttal testimony sought to explain as false and admittedly self-serving, coupled with the Reynoldses' testimony of the actual cashing episode and defendant's attempted retrieval of the check, plus defendant's unfulfilled promises to make good on this check as well as two others cashed under similar circumstances, presents enough evidence which, if believed by the jury, would constitute proof of all necessary elements of the charge beyond a reasonable doubt.

■■ Although it is true, as defendant points out, that impeachment testimony generally cannot be used as substantive evidence (*People v. Newman*, 30 Ill.2d 419, 197 N.E.2d 12), here, the truth of Officer Quinlan's testimony on rebuttal was confirmed by King on surrebuttal. This concession changed the character of the officer's testimony from impeachment, only, to substantive evidence admissible to show the truth of King's statement to him. There then remained no question as to the truth of the officer's testimony. The jury was thus asked to determine whether King was being truthful to the police officer or truthful when he said he had lied to the police officer. The jury obviously chose to believe that what King had initially told the officer was true, thereby diminishing his own credibility as well as defendant's, and establishing proof of the necessary mental state for conviction of defendant. Since it is for the

trier of fact, having the opportunity to observe the witnesses, to determine their credibility and resolve conflicts in the testimony, this court will not substitute its judgment for the trier of fact. *People v. Davis,* 71 Ill.App.2d 300, 218 N.E.2d 850.

Next, defendant contends that Officer Quinlan's testimony was inadmissible because a proper foundation was not laid. As it turns out, none was necessary, but, were that not so, the point would still be without merit, as no objection on that ground was raised in the trial court. *People v. Washington,* 23 Ill.2d 546, 179 N.E.2d 635.

■■ Next, defendant charges that the jury was improperly instructed in that it was given only one instruction relating to the necessary elements of proof required for conviction of the crime charged and it failed to mention intent to defraud as an element which had to be proved. The only instruction included in defendant's abstract is, to be sure, incomplete as to all elements of the crime charged, but the point must fall (1) because no other instructions appear in the abstract, so we need not consider any issue involving instructions, and (2), in any event, an instruction tendered by defendant and given by the court adequately paraphrases a proper elements instruction patterned after I.P.I.-Criminal § 13.23[4].

■■ Finally, defendant alleges that it was error to have three similar complaints tried together, even though he admits there was no objection made at the time of trial and there was no question of the adequacy of defendant's representation by counsel. A similar contention was rejected by the court in *People v. Woods,* 23 Ill.2d 471, 179 N.E.2d 11, where a defendant was tried on three disassociated felonies at the same time, but, as in the present case, did not object to the procedure at the time of trial. There, the court held (at page 472) that "[a]n objection cannot be made for the first time on appeal and the error complained of will not be given credence in seeking grounds for a new trial. [Citation.]" Not only were the other two charges in the present case related crimes of deceptive practice involving the same overall modus operandi closely related in time to the offense charged and in one case involving the same purported drawer of payroll checks (Tilt Sash Corp.), but the two related charges were dismissed prior to sending the case to the jury, thereby avoiding any possible pyramiding of one conviction upon proof of another. See *People v. Palmeri,* 1 Ill.App.3d 1033, 275 N.E.2d 486.

■■ Furthermore, complete evidence of other crimes is admissible to prove knowledge, intent, motive, design, plan, identification, and to negate defenses of mistake or inadvertence, or to show an absence of good faith, and proof of such other crimes need not be beyond a reasonable doubt. (*People v. Smith,* 3 Ill.App.3d 958, 279 N.E.2d 512.) In the

present case, evidence of defendant's participation in the two check-cashing incidents on May 28, one week before the offense for which he was convicted, was properly admitted to show his involvement in a plan to obtain blank checks, completed through illegal means and used for the purpose of defrauding those who cashed them for him in good faith. The judgment is affirmed.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.