THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN CUNDIFF, Defendant-Appellant.

(No. 73-174;

Third District—December 28, 1973.

Charles R. McGuire and Paul G. Slavens, both of Peoria, for appellant.

Jay H. Janssen, Assistant State's Attorney, of Pekin, for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

This is a criminal prosecution arising from two counts of deceptive practice. The defendant, John Cundiff, delivered two checks that were not honored due to insufficient funds. Defendant was found guilty by a jury and was sentenced by the Circuit Court of Tazewell County to one year in Vandalia on Count I and given three years probation on Count II. Defendant has appealed contending basically that he could not be guilty of deceptive practice on the facts adduced on the trial of the cases.

The defendant owned a grain storage business in Deer Creek, Tazewell County, Illinois. The business consisted of storing grain at his elevator warehouse, buying grain from farmers and reselling it to terminal elevators.

A warehouse inspector from the Illinois Department of Agriculture began to inspect the defendant's warehouse on April 6. The inspector found a 12,027 bushel shortage of corn and ordered that no grain be shipped from the warehouse. Both of defendant's checks at issue were written thereafter.

Warren Kaiser, the complainant of Count I had stored grain in defendant's warehouse. On March 28, 1972 he sold the grain to defendant. He testified that, "Well, when I sold it he asked me for about 10 day's time so he could move out some grain in  preparation for the settlement which he asked me to wait until April 10th to settle for the grain, which I agreed to do." On April 6, defendant gave Kaiser a check and "asked me to hold this check until the 10th of April which I did."

On April 10, Kaiser deposited the check for collection and it was returned marked, "insufficient funds". He was never paid. Defendant's bank records showed a balance on April 6 of $169.74, on April 7 of $2103.91 and on April 10, 1972 of $962.73.

The defendant testified in his own behalf and offered reputation wit-

nesses. As part of rebuttal, however, testimony was introduced that Warehouse Receipt # 147 for 9397 bushels of corn was purchased by check number 19555 issued April 6 to Mr. Kaiser.

Section 17—1(d) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, sec. 17—1(d)) provides that a person commits a deceptive practice when, with intent to defraud:

> "With intent to obtain control over property or to pay for property, labor or services of another he issues or delivers a check * * * knowing that it will not be paid by the depository."

■■ As was pointed out by the Joint Committee Comments, section 17—1(d) is a codification of former section 255. In *People v. Balalas*, 334 Ill. 444, the Illinois Supreme Court described the essential elements of the crime. On page 446 the court said, "The statute divides the offense into four separate, essential elements: (1) An intent to defraud; (2) the making, drawing, uttering or delivering of a check, draft or order for the payment of money upon some bank or other depository; (3) the obtaining thereby from another of money, personal property or other valuable thing; and (4) knowledge of the maker or drawer at the time that he has not sufficient funds in or credit with such bank or other depository for the payment of such check, draft or order in full upon presentation."

Where an intent to defraud is an element of the offense under a worthless check statute, a disclosure by the drawer of a check to the payee, at the time of the issuance of the check, that the drawer does not have sufficient funds in or credit with the bank to meet the check purges the transaction of its criminal character, because fraudulent intent is absent and the transaction is essentially one of extending credit to the drawer. A conviction may not be had under such circumstances. (32 Am.Jur.2d *False Pretenses* § 81.) The giving of a worthless check in payment of a preexisting debt is generally held not to be within the ban of the statute (Annot., 59 A.L.R.2d 1159, sec. 2), the reasons being that the party alleged to have been defrauded did not, on the strength of the check, part with anything of value and further the acceptance of a check does not pay a debt. The payment is only conditional upon the integrity of the check in the absence of an agreement to the contrary. The check was a conditional payment and being dishonored the conditional payment was abortive.

2 Wharton, *Criminal Law and Procedure*, sec. 613, p. 384 (1957) states, "When intent is required to constitute the offense and the Defendant discloses to payee that he does not at the time have sufficient funds on deposit and the payee agrees to refrain from making immediate presentment, the Defendant is not guilty of the offense."

Where the parties agree at the time the check is issued that it shall not be presented for payment until a later date, and the fair implication is that there were not sufficient funds at the time the check was issued the offense is generally held not to have been committed because the fraudulent intent is lacking, the transaction being in its essential nature an extension of credit to the drawer. 35 C.J.S. *False Pretenses* § 21b(2) p. 834.

Under statutes denouncing the obtaining of money or property by false pretense or token, the mere uttering or passing of a worthless check in payment of a past indebtedness does not constitute such a crime. This has also been held true under a statute denouncing the giving of a worthless check with intent to defraud, because in the absence of *simultaneously* obtaining money or property there is no intent to defraud. 35 C.J.S. *False Pretenses* § 21c, p. 837.

Surprisingly, there are no Illinois cases on the points. In *People v. Westerdahl*, 316 Ill. 86, the defendant at about 5:30 P.M. on a Saturday in exchange for a new car gave a check dated two days later. He stated that he had $4000 in the bank and that the check was good. The check was never paid and defendant later admitted that he did not have sufficient money in the bank to pay the check. The court held that the fact that the check was postdated did not take the case out of the statute, that by tendering the check the purpose was presumed to be to induce the belief that it would be paid upon presentation. Only upon the assumption that the check was good did the defendant obtain delivery of the new automobile, that the automobile was delivered in reliance upon the check and not upon the personal credit of defendant.

In *Barton v. People*, 35 Ill.App. 573, affd. 135 Ill. 405, the defendant had promised to pay cash on delivery of a buggy and other goods. Upon delivery, he gave an agent of the seller a worthless postdated check without any explanation. The court held that the promise to pay cash on delivery, coupled with delivery of the check without explanation was sufficient to warrant the conviction.

Although the Uniform Commercial Code establishes a presumption against the extension of credit, there is no doubt that parties to a sale may agree as to the time payment may be made, and permit a sale on credit. Where the instrument offered by the buyer is not a "payment" but a credit instrument such as a note or a postdated check, the taking of the instrument by the seller amounts to a delivery on credit, at least where third parties are concerned. (67 Am.Jur.2d *Sales* § 408, citing comment 6 to Uniform Commercial Code, sec. 2—512.) The Illinois Code Comment states, "In accord with Official Comment 6 is *Anstedt v. Sutter* (1863), 30 Ill. 164 (wine sold to buyer under circumstances establishing that the seller did not expect payment from the buyer the same day as the day of

sale was a sale 'on credit' * * *, the court observing that whether the seller expected payment the next day or in three months made no difference )."

■■ In the instant case if the sale was made on March 28 there can be no doubt but that it was a sale on credit. If the sale was on April 6 it would also appear to be a sale on credit since Kaiser agreed to hold the check until April 10. A debtor-creditor relationship was established and not a criminal offense. See *People v. Billingsley*, 67 Ill.App.2d 292, 296.

The judgment on Count I must be reversed.

Turning now to Count II, Evelyn Aberle, the wife of complainant Ralph Aberle first testified, "we had sold our corn and we came after my husband's check." The defendant on April 7 delivered the check to her and she took it home to her husband. Ralph Aberle testified that he had told his wife to call defendant to sell his corn and then go down and pick up the check. The check for $3596.13 was deposited next day and returned 8 or 9 days later marked "insufficient funds."

The banker testified that on April 7 the balance was $2103.91, that on April 6 the defendant made a deposit of $8000 and that on April 7 the defendant made 3 deposits totalling $7619.61, that from April 6 through April 10 there were six separate deposits totalling about $20000 but that 17 checks were paid totalling about $19000. Complainant's check was not paid.

Defendant argues that because he had at one point in time over $8000 credited to his account on April 7 that he could not be found to have known that the check would not be paid by the depository.

■■ Generally the test of sufficiency of funds comes at the time of presentation of the check. Thus, where the drawer has sufficient funds in the bank to cover a check at the time he issues it, he may nevertheless be guilty under a worthless check statute if his funds or credit with the bank are insufficient for payment of the check at the time it is presented for payment, because he had other checks outstanding which, when presented, reduced his funds on deposit to a point where they were insufficient to cover the particular check when it was presented. 32 Am.Jur.2d *False Pretenses* § 76; 35 C.J.S. *False Pretenses* § 21, note 70.

Defendant further argues that he should have been allowed to show the jury that he intended to pay the losses through subsequent Chapter 11 proceedings in the Federal Bankruptcy Court.

The following is all that appears from the transcript of testimony:

"Q. John, one final question. Have you made any legal arrangements to effect the payment of these bad checks?

Assistant State's Attorney: Objection. It is completely irrelevant to the issues in this case.

The Court: Sustained."

■■■ We agree that such a defense is entirely irrelevant. The crime is complete, if it has been committed at all, when the making, delivery, or uttering of the check takes place and it is immaterial whether payment or restitution is subsequently made. (35 C.J.S. *False Pretense* § 21, note 73.) The fact of Chapter 11 Bankruptcy instead of negativing any fraudulent intent, would tend to strengthen an inference thereof.

The judgment on Count II must be affirmed.

Judgment on Count I reversed.

Judgment on Count II affirmed.

STOUDER and SCOTT, JJ., concur.