THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
YOLANDA MITCHELL, Defendant-Appellant.

Fifth District   No. 76-321

Opinion filed June 21, 1977.

G. MORAN, J., dissenting.

William C. Evers, III, and James J. Massa, both of Collinsville, for appellant.

Kelly D. Long, State's Attorney, of Hillsboro (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Defendant, Yolanda Mitchell, was charged in the circuit court of Montgomery County with the offense of deceptive practices. Following a jury trial defendant was found guilty as charged and was sentenced to conditional discharge for a period of two years and was fined $500. From the judgment entered by the trial court, defendant brings this appeal.

On appeal defendant presents the following issues for review: whether the evidence was sufficient to support the verdict; whether the trial court erred in excluding certain evidence; whether the court erred in refusing an instruction tendered by defendant; and whether the fine was excessive.

This case arose from a check drawn from defendant's bank account and signed by her which was made payable to Milnot Company in the amount of $78.15. The check was used to purchase a large quantity of ice cream for defendant's business. Verna Brakenhoff, a receptionist with Milnot, testified that on September 5, 1975, defendant signed the check in her presence and gave it to her and in return received possession of the ice cream. The witness stated that defendant did not tell her that there were insufficient funds to cover the check nor that the check should be held for a period before presenting it for payment. The check was dated September 5, 1975. Leon Green, the sales manager for Milnot, testified that he was not present during the September 5 sales transaction in question but that he learned that the check had been returned unpaid about a week to ten days thereafter. Green stated that he also had not been told on the date the check was issued that there were insufficient funds to cover the check nor that the check should be held for a period before presenting it for payment. On cross-examination by defendant, Green described his efforts to obtain payment from defendant leading eventually to a return of a portion of the ice cream purchased. Oliver Camillo, a vice-president of the First National Bank of Collinsville, next testified concerning defendant's bank records. Defendant's account was opened on August 2, 1975, with a deposit of $400 and an additional deposit of $120 was made on August 12, 1975. August 12, 1975, was the last date on which the bank records reflected a positive balance in the account. Evidence was presented showing that prior to September 5, 1975, 14 checks were returned, that defendant was sent six overdraft notices

covering checks in excess of $600, and that no further deposits had been made after August 12, 1975. Camillo testified that the bank charged $2 for every check that was returned and that defendant's account was closed on November 14, 1975, when these charges totaled approximately $78.

Defendant testified denying that she intended to defraud anyone. She stated that on the date of the transaction she was aware that her account contained insufficient funds to cover the amount of the check but that Green also had been so informed, was present during the transaction and had agreed to hold the check one week before presenting it for payment. She also testified that she did not subsequently attempt to pay the check because she had returned the ice cream. On rebuttal it was shown that only approximately $58 worth of ice cream was returned.

Defendant first contends that the evidence was insufficient to support the verdict and that she was not proved guilty beyond a reasonable doubt. Both arguments involve the identical question; whether an intent to defraud was proven. Initially we note that defendant, in her brief, appears to assert that there was no evidence that she knew that there were insufficient funds in her account to cover the check. However, this assertion is wholly unsupported by the record. The evidence shows that prior to September 5, 1975, defendant was sent notice by her bank that her account reflected a negative balance and indeed defendant, herself, admitted at trial that she knew that there were insufficient funds to cover the check to Milnot.

■■ Next, defendant relies on a statement in *People v. Balalas*, 334 Ill. 444, 446, wherein the court stated:

> "[A] person knowing that he has insufficient funds may issue a check without an intent to defraud, as where he expects to deposit sufficient funds before the check can be presented."

Defendant argues that an intent to defraud was not proven since her testimony shows that she had informed Green who was present during the transaction that she had insufficient funds and had asked him to hold the check for one week. Green, however, testified to the contrary, that he had not been so informed and that he was not even present during the transaction. Brakenhoff also testified that Green had not been present at the time and that she, herself, was not told either that there were insufficient funds or that the check should be held for a period before presenting it for payment. The evidence thus presented a conflict which was the function of the jury to resolve, having had an opportunity to observe the witnesses and determine their credibility. (*People v. Everett*, 14 Ill. App. 3d 421, 302 N.E.2d 723.) The jury obviously chose not to believe the testimony of defendant and we note that there was no evidence showing that defendant expected to deposit sufficient funds to

cover the check after it had been issued. Consequently, we find no merit to defendant's contention.

Defendant's second contention is that the trial court erred in refusing to allow evidence that she filed for bankruptcy around October 21, 1975, and in refusing to allow her to cross-examine Green concerning the bankruptcy.

■■ Defendant argues, citing *People v. Reans*, 20 Ill. App. 3d 1005, 313 N.E.2d 184, that this evidence was relevant as tending to disprove an intent by her to defraud Milnot since it explains the reason for her nonpayment of the check. Specifically, she quotes the court in *Reans* which stated:

> "[W]e would normally favor the admission of evidence of attempts at restitution for the purpose of having a jury or a trier of fact consider these activities with all other facts in determining the absence or presence of felonious intent * * *." (20 Ill. App. 3d 1005, 1008-09, 313 N.E.2d 184, 187.)

We find defendant's reliance on *Reans* to be unfounded since in that case the defendant was convicted of theft by deception. The "intent" referred to in the quote was the element of intent to *permanently* deprive the owner of the use or benefit of the property rather than an intent to defraud which was at issue in the case at bar. In *People v. Cundiff*, 16 Ill. App. 3d 267, 305 N.E.2d 735, the defendant was convicted of deceptive practices. On appeal he argued that he should have been allowed to show the jury that he intended to pay the losses through subsequent chapter 11 proceedings in the Federal Bankruptcy Court. The court in affirming his conviction stated:

> "We agree that such a defense is entirely irrelevant. The crime is complete, if it has been committed at all, when the making, delivery, or uttering of the check takes place and it is immaterial whether payment or restitution is subsequently made. [Citation.] The fact of Chapter 11 Bankruptcy instead of negativing any fraudulent intent, would tend to strengthen an inference thereof." (16 Ill. App. 3d 267, 272, 305 N.E.2d 735, 739.)

Clearly defendant's intent to defraud is not measured by her inability to pay more than a month after the transaction but rather by her inability to pay at the time that she issued the check in return for the ice cream, ostensibly as payment thereof, while knowing that the check would not be paid by her bank. Therefore defendant's filing for bankruptcy was irrelevant and properly refused.

Defendant urges that this evidence was nonetheless admissible since the State "opened the door" by introducing evidence of the bank records covering a period up to November 12, 1975, when the account was

closed. We disagree. Defendant made no objections to the introduction into evidence of her bank records and this evidence only established that her account reflected a negative balance from August 13, 1975, until the account was closed. It was defendant not the State, who elicited testimony, often over the State's objection, of her activities subsequent to the transaction in attempting to settle the debt or make restitution. The prosecutor's comment during closing argument that the check had still not been paid at the time of trial was an invited response to the defense argument that defendant had taken steps to pay the debt. That the trial court permitted considerable latitude to defendant in presenting evidence of her attempts to subsequently make restitution can provide no basis for allowing defendant to introduce evidence explaining her failure to ultimately pay the check in full.

Defendant also argues that she should have been permitted to cross-examine Green concerning his knowledge of her bankruptcy proceeding. She argues that such an inquiry would have shown his "bias" in that Green signed a complaint only after he learned of the bankruptcy.

■■■ Generally, the latitude to be allowed in cross-examination of a witness rests largely in the discretion of the trial court. While cross-examination should be kept within fair and reasonable limits, it is only in a case of clear abuse of such discretion, resulting in manifest prejudice to a defendant, that a reviewing court will interfere. (*People v. Halteman*, 10 Ill. 2d 74, 139 N.E.2d 286.) While the widest latitude should be given a defendant in cross-examination for the purpose of establishing the bias of a witness (*People v. Naujokas*, 25 Ill. 2d 32, 182 N.E.2d 700), in the case at bar, defendant's attempted inquiry would have gone far beyond the perimeters of merely showing bias. Defendant argues that from a showing that Green filed the complaint in the instant case because he had received notice of the bankruptcy, it could be inferred that Green was testifying falsely. This argument is a *non sequitur*. With respect to motive to file a complaint, clearly Green, as a victim of a crime, stands in the same position as any other victim of a crime and his motive, whether it was outrage due to the crime or a desire for revenge because of the crime, has no relevance to the question of the guilt or innocence of the defendant or the truth or falsity of the testimony. Rather, the attempted cross-examination was intended to inject an issue other than the guilt of defendant into the trial and to shift that guilt to a person other than the defendant. (*People v. Hanks*, 17 Ill. App. 3d 633, 307 N.E.2d 638.) We therefore find no abuse of discretion by the trial court's refusal of the attempted cross-examination of Green.

Defendant's next contention is that the trial court erred in refusing to give her tendered instruction as amended on the subject of intent to defraud. We disagree.

The facts recited in the instruction were incomplete and hence would have misled the jury. (*People v. Dore,* 339 Ill. 415, 171 N.E. 554.) In any event, the jury was given IPI Criminal No. 13.23 on the definition of the offense of deceptive practices and IPI Criminal No. 13.24 on the issues in deceptive practices. These instructions adequately covered the subject matter of defendant's tendered instruction and therefore the trial court did not err in refusing the instruction. *People v. Hines,* 28 Ill. App. 3d 976, 329 N.E.2d 903.

■■ Lastly, defendant contends that the amount of the fine imposed, $500 to be paid over a two-year period, was excessive. It is not contended nor does the record show that the amount of the fine or the method of payment (at a rate of $20.75 per month until the fine, costs and restitution are paid in full) are not commensurate with defendant's financial resources or future ability to pay nor that the fine imposed will prevent defendant from making the court ordered restitution to the victim. (See Ill. Rev. Stat. 1975, ch. 38, par. 1005—9—1(c).) Defendant argues in her brief that she was fined "for exercising her rights to take bankruptcy." This is not true. The fine was imposed as a part of the sentence for the crime for which defendant stood convicted. Review of the record shows that the fine imposed, which was well within statutory limits, was not an abuse of discretion. *People v. Taylor,* 33 Ill. 2d 417, 211 N.E.2d 623; *People v. Grau,* 29 Ill. App. 3d 327, 330 N.E.2d 530.

For the foregoing reasons the judgment and sentence of the circuit court of Montgomery County is affirmed.

Affirmed.

CARTER, P. J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

In this case the finding of the requisite intent to defraud depends somewhat upon the evaluation of the credibility of Green. If, as the defendant testified, there was an agreement to hold the check, a debtor-creditor relationship was established and the defendant would not be subject to criminal sanctions. *People v. Cundiff,* 16 Ill. App. 3d 267, 305 N.E.2d 735.

> "The main objective of cross-examination in similar situations should be to impair the credibility of the witness on the grounds that he had something to gain by testifying against the defendant."

(*People v. Hanks,* 17 Ill. App. 3d 633, 638, 307 N.E.2d 638, 642.) The defendant sought to identify a motive for Green to testify falsely as evidenced by his failure to sign the complaint until after the bankruptcy proceedings had been initiated.

The majority opinion characterizes Green's interest as the equivalent of any victim of a crime. Most victims of a similar transaction would have a civil or a criminal action open to them. The filing of the bankruptcy petition removed the option from Green. If, as defendant testified, there was an agreement to hold the check, the debt would be dischargeable in bankruptcy. Any civil proceeding against the defendant would be stayed under the Bankruptcy Act and the debt would be dischargeable in bankruptcy unless Green could establish that the property was obtained by false pretenses. (Section 17(a)(2) of the Bankruptcy Act (11 U.S.C. §35). His testimony in the criminal case, as well as the judgment of conviction, would be admissible in the bankruptcy proceeding. (Fed. R. Evid. 801, 803(22).) Thus a motive to misrepresent the actual occurrence in order to salvage the debt from the possible discharge in bankruptcy exists. The failure of the trial court to allow cross-examination into this area in a case which hinges upon the credibility of the complainant is a clear abuse of discretion. Where such an abuse of discretion, as here, results in manifest prejudice to the defendant, we must reverse. *People v. Halteman*, 10 Ill. 2d 74, 134 N.E.2d 286; *People v. George*, 49 Ill. 2d 372, 274 N.E.2d 26.

Defendant also alleges the trial court erred in refusing to give her tendered instruction or allow her to amend the instruction. Defendant's proferred instruction is as follows:

"Where at the time of a sale the seller agrees to hold buyer's check for payment until a later date, a debtor creditor relationship was established and the buyer was not guilty of violating the deceptive practice statute when the check was not honored due to insufficient funds."

By this instruction, defendant sought to instruct the jury that if the jury found that an agreement to hold the check for payment existed, then as a matter of law defendant lacked the intent to defraud and was not guilty. Under *People v. Cundiff*, 16 Ill. App. 3d 267, 305 N.E.2d 735, this is a correct statement of the law. The majority finds the instruction incomplete in its recitation of facts and thus tending to mislead the jury. Clearly, the instruction is an accurate and complete statement of the law and is not misleading. Nor is the majority's reliance upon the instructions given as an adequate foundation of law for the jury's decision convincing.

The following instructions, in the form of IPI Criminal No. 13.23 and IPI Criminal No. 13.24, were given at trial:

"A person commits the crime of deceptive practice who * * * with intent to defraud and to obtain control over property of another issues and delivers a check upon a bank knowing that it will not be paid by the bank."

"To sustain the charge of deceptive practice, the State must

prove the following propositions:

First: That the defendant, with intent to defraud and to obtain control over property of the Milnot Co. issued a check upon a bank; and

Second: That the defendant knew that the check would not be paid.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

The combination of IPI Criminal Nos. 13.23 and 13.24 is not sufficient to overcome the failure of the trial court to instruct the jury on the law according to defendant's theory. Neither IPI Criminal No. 13.23 nor No. 13.24 contains an express statement on the meaning of intent to defraud as applied to the case.

"[A] defendant is entitled to the benefit of any defense shown by the entire evidence and has the right to have the jury instructed as to the law applicable to any state of facts which the jury might legitimately find to have been proved from the evidence." *People v. Kalpak* (1957), 10 Ill. 2d 411, 424, 140 N.E.2d 726, 734.

Only slight evidence upon a theory of the case is necessary to support an instruction, and a court is not to weigh the evidence in determining whether the instruction will be given. (*People v. Hall*, 25 Ill. App. 3d 992, 324 N.E.2d 50; *People v. Khamis*, 411 Ill. 46, 103 N.E.2d 133.) In this case the defendant testified that Green agreed to hold the check for later payment. Although this was denied by Brakenhof and Green, it is clearly sufficient evidence to support the tendered instruction. The defendant is entitled to have the jury determine the facts and apply the law to those facts. The failure to give the instruction requires reversal.