THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
OLUBUKOLA A. OGUNSOLA, Defendant-Appellant. .

Fourth District    No. 16070

Opinion filed December 3, 1980.

CRAVEN, J., dissenting.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Gary J. Anderson and Darryl D. Pratscher, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

Deceptive practices—jury trial—guilty—60 days in jail.

We affirm the conviction.

On appeal, Ogunsola claims that: (1) the State failed to establish an intent to defraud; (2) the information was fatally defective in omitting an essential element of the offense; (3) he was denied a fair trial because the jury was not instructed on an element of the offense; (4) he was denied effective assistance of counsel; and (5) the trial court relied upon an unconstitutional statute in ordering a forfeiture of his cash bond.

We reject defendant's arguments on the first four points, but we agree with him on the fifth and reverse the trial court's forfeiture order.

But first a brief look at the facts.

On April 5, 1979, an information was filed charging the defendant with the offense of deceptive practices (Ill. Rev. Stat. 1979, ch. 38, par. 17—1(B)(d)), in an amount in excess of $150.

At trial, the State produced testimony establishing that on February 27, 1979, defendant entered Mitch's Import Auto Center and requested repairs for his 1972 Volkswagen. Defendant signed a work order which did not have any prices listed. Fred Mitchell, the owner of the auto center, stated that the brakes were repaired by freeing frozen adjusters and that the front and rear shocks were replaced. According to Mitchell, the front shocks had been difficult to remove.

Mitchell testified that he charged $30 per hour for labor. The total charge for the repairs to defendant's automobile was $286.80, representing $61.20 in labor for adjusting the brakes, $129 for labor in installation of the shock absorbers, $83 for the shocks, and $9 for miscellaneous parts. Mitchell stated that defendant did not object to the charges when the bill was presented and that he could not recall telling the defendant that he would not get his car back until he paid for the repairs.

On February 28, 1979, defendant gave Mitchell a check drawn on an account with the Prairie State Bank of Bloomington, Illinois, in the amount of $286.80. An employee of the bank stated that the balance in the checking account on about February 23, 1979, was $47.43. The check to the auto center was presented on March 2 and overdrew defendant's account by $250. The check was stamped "NSF" (insufficient funds), and returned. On the afternoon of March 7 defendant requested that the bank place a stop-payment order on the check.

At the close of the State's case, defense counsel moved for a directed verdict, arguing that the State had failed to prove defendant's intent to defraud. The trial court denied the motion.

Defendant produced only one witness in his defense. Kenneth Winn,

an automobile mechanic, testified that he had worked on brakes and shock absorbers on several 1972 Volkswagens. He charged $16 per hour for labor and estimated that a fair price for installing shock absorbers would be $45 for the front and $8 for the rear in labor, and $62.20 in parts for the best shock absorbers available. A fair price for adjusting and freeing the brakes would be $32. Under his estimate, the total charges for defendant's repairs would have been $147.20.

The jury found the defendant guilty of deceptive practices *under* $150 and defendant was sentenced to serve 60 days in the county jail. In addition, the trial court entered an order declaring a forfeiture of defendant's bond deposit to reimburse the county for the services provided by the public defender.

Before we directly address each of defendant's contentions, a short digression is appropriate to discuss a threshold question.

The statute which the defendant was convicted of violating provides:

> "A person commits a deceptive practice when, with intent to defraud:
>
>            \*    \*    \*
>
> (d) With intent to obtain control over property or to pay for property, labor or services of another he issues or delivers a check or other order upon a real or fictitious depository for the payment of money, knowing that it will not be paid by the depository. Failure to have sufficient funds or credit with the depository when the check or other order is issued or delivered is prima facie evidence that the offender knows that it will not be paid by the depository, and that he has the intent to defraud; \* \* \*." Ill. Rev. Stat. 1979, ch. 38, par. 17—1(B)(d).

■■ From a literal reading of the statute it appears as if the State is required to establish two separate intents—the intent to defraud and the intent to obtain control over property. The apparent reason for this confusing situation is that the "intent to defraud" language was inserted by an amendment following the original promulgation of the statute. (See Ill. Ann. Stat., ch. 38, par. 17—1, Historical Notes (Smith-Hurd 1977).) We recognize here, however, that a violation of the statute as written can only be established by proof of intent to defraud *and* proof of intent to obtain control, since both are essential elements of the offense. As to the former element, the legislature has provided some guidance.

> "(iii) To act with 'intent to defraud' means to act wilfully, and with the specific intent to deceive or cheat, for the purpose of causing financial loss to another, or to bring some financial gain to oneself. It is not necessary to establish that any person was actually

defrauded or deceived." Ill. Rev. Stat. 1979, ch. 38, par. 17—1(A)(iii).

With these principles in mind, we now examine defendant's arguments.

## I

Defendant's initial contention is that he was not proven guilty beyond a reasonable doubt because the State failed to prove his intent to defraud. Defendant claims that it is clear that the State is required to prove beyond a reasonable doubt each of the essential elements of the offense. *People v. Stone* (1973), 15 Ill. App. 3d 926, 305 N.E.2d 645.

■■ The crux of defendant's argument is that when he tried to obtain his car from Mitchell he was presented with an exorbitant bill. He was thus faced with the option of paying the excessive and unreasonable charge or leaving without his automobile. *Defendant concedes that he issued a check for the full amount of the bill, knowing he had insufficient funds and with the intent to stop payment.* He argues, however, that after regaining his automobile he would be in an equal bargaining position which would allow him to negotiate a fair and reasonable cost for the repairs. Thus, rather than intending to defraud, he was merely attempting to equalize the relative bargaining positions.

The defendant's arguments must be rejected. The word "defraud" necessarily implies an advantage to the party defrauding and a corresponding damage to the party who is defrauded. (See generally *People v. Holtzman* (1916), 272 Ill. 447, 112 N.E. 370.) The essence of the term is an unauthorized change in the legal relationships of the parties. The conduct proscribed by the statute is the issuance of bad checks. See Ill. Ann. Stat., ch. 38, par. 17—1, Committee Comments, at 232 (Smith-Hurd 1977).

Defendant admits he issued a bad check with the intent to induce Mitchell into relinquishing control of the automobile. This is all that was needed to establish the offense. Even if the defendant ultimately intended to pay for the repairs, he clearly issued a bad check intending to overcome a valid garageman's lien in favor of Mitchell. See Ill. Rev. Stat. 1979, ch. 82, pars. 40, 47a.

Self-help consumerism simply cannot be allowed. Our laws provide for instances when an individual can disregard the requirements society places upon him. The defenses of compulsion and necessity—which are not argued here—are specifically designed for these situations. (See Ill. Rev. Stat. 1979, ch. 38, pars. 7—11, 7—13.) If defendant truly had a valid grievance, his remedy would have been found in a civil action for replevin (Ill. Rev. Stat. 1979, ch. 119, pars. 1 through 28), or in the small claims court (73 Ill. 2d R. 281), and not by the issuance of worthless paper. Our legal system exists to lend order to the relationships between

individuals. The only way this system can be effective is if individuals work within its parameters. What a woeful state of affairs it would be if everyone followed Mr. Ogunsola's cue and took the law into his own hands!

Defendant strenuously points to the fact that the jury found him guilty of deceptive practices *under* $150 as evidence of the fact that it felt he was being overcharged. As noted above, however, this does not mitigate defendant's guilt. The jury was merely exercising its traditional factfinding function in declaring that Mitchell's loss was less than $150. Such a finding is consistent with the evidence presented by the defendant, and argued during closing argument, that the reasonable value for the repairs was $147.20.

Finally, assuming *arguendo* that defendant's self-help actions present a valid defense, there was sufficient evidence presented for the jury to reject defendant's theory. The uncontradicted testimony of Mitchell was that defendant voiced no objection when presented with the bill. Clearly, the jury could infer that if defendant had a question concerning the propriety of the charges, he would have expressed it. Furthermore, the evidence indicates that defendant did not have sufficient funds in his account to pay what he contends was a reasonable charge. Also, the seven-day delay in issuing the stop-payment order could lead to the inference that this action was merely an afterthought.

## II

Defendant's next argument centers on the information. He claims his conviction must be reversed because the information failed to apprise him of the precise offense with sufficient specificity to prepare his defense and thus was void.

Our review of the record reveals that this question is being raised for the first time on appeal. Defendant here filed no pretrial motion to dismiss and did not challenge the sufficiency of the information in his post-trial motion or with a motion in arrest of judgment. (See *People v. Pettus* (1980), 84 Ill. App. 3d 390, 405 N.E.2d 489.) Where the sufficiency of a complaint is attacked for the first time on appeal, it is determined by a different standard than that employed in the trial court. In this situation, the failure to allege an element of the offense in the complaint does not render it *per se* void. (*People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437.) When attacked for the first time on appeal, a complaint is sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. *Pujoue*; *People v. Walker* (1980), 83 Ill. 2d 306, 415 N.E.2d 1021.

■■ We find that the information in this case, while omitting the element of intent to defraud, was sufficient under the *Pujoue* standard. The record indicates that defense counsel was aware of this element of the offense. In fact, counsel argued that the State failed to prove this element in his motion for a directed verdict and in his closing arguments to the jury. Defendant's contention, that he was not apprised of this element, is wholly without merit and must be rejected.

### III

Defendant next argues that reversible error occurred because the jury was not instructed that it had to find that he had the intent to defraud. As the State points out, however, this issue has been waived by defendant's failure to either object or tender the proposed instruction. Our scope of review is thus limited to substantial defects. (73 Ill. 2d R. 451(c).) We note that waiver is, however, the rule, and this provision is a limited exception to be used only to correct grave errors, or to be applied where the cause is close factually and fundamental fairness requires the jury to be properly instructed. *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.

We hold that the instruction in this case—Illinois Pattern Jury Instructions, Criminal, No. 13.24 (1968) (hereinafter IPI)—does not adequately state the law and as such it was error for the trial court to give such instruction to the jury. The instruction read:

"To sustain the charge of deceptive practices under $150, the State must prove the following propositions:

First: That the defendant, with intent to pay for labor and property of Fred Mitchell, delivered a check upon a bank; and

Second: That the defendant knew that the check would not be paid.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

Defendant argues that the trial court erred by failing to *sua sponte* instruct the jury on the elements of the crime and in allowing an instruction which would remove from the jury's consideration an essential element of the offense.

Under the facts of this case, the trial court did not err in failing to *sua sponte* reject the instruction. As noted above, the instruction given was taken from IPI Criminal No. 13.24. Our supreme court rules provide:

"Whenever Illinois Pattern Instructions in Criminal Cases (IPI-Criminal) contains an instruction applicable in a criminal case, giving due consideration to the facts and the governing law, and the court determines that the jury should be instructed on the subject, the IPI-Criminal instruction shall be used, unless the court determines that it does not accurately state the law." 73 Ill. 2d R. 451(a).

From a look at prior case law, the trial court could have concluded that the instruction was adequate. (See *People v. Mitchell* (1977), 50 Ill. App. 3d 120, 365 N.E.2d 185; *People v. Everett* (1973), 14 Ill. App. 3d 421, 302 N.E.2d 723.) The trial court in this case properly followed the mandate of the supreme court rules and did not err in *sua sponte* failing to reject the proposed instruction.

■ The State claims that no error has occurred since it cannot think of any situation where the jury could find the factors listed in the IPI instruction without also finding an intent to defraud. We decline to engage in the mental gymnastics the State suggests. It is well settled that an instruction which removes an element of the offense from the jury's consideration is erroneous. (See *People v. Murawski* (1946), 394 Ill. 236, 68 N.E.2d 272; *People v. Richards* (1975), 28 Ill. App. 3d 505, 328 N.E.2d 692.) The instruction as given in this case was clearly deficient.

We do not find, however, that reversible error has occurred under the facts of this case. As noted above, defendant admitted in the trial court and in this court that he wrote the instant check knowing there were insufficient funds, attempting to regain possession of his automobile. In substance, he admits guilt. Additionally, defense counsel's closing arguments to the jury focused almost exclusively upon this element. Not only do we feel certain that there was overwhelming evidence indicating the intent to defraud, but it also appears as if the jury has, in fact, made such a finding.

IV

Defendant also contends that he was denied effective assistance of counsel since his court-appointed attorney failed to object to the issue instruction. Our discussion of the instruction above is dispositive of this question. We do not feel, under the facts of this case, that defendant was prejudiced in any way by counsel's failure to object. (*People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203; *People v. Cosey* (1980), 82 Ill. App. 3d 968, 403 N.E.2d 656.) Indeed, the fact that defendant was found guilty of deceptive practices under $150 is testimony to counsel's effectiveness.

V

In light of our supreme court's decision in *People v. Cook* (1980), 81

Ill. 2d 176, 407 N.E.2d 56, the trial court's order forfeiting defendant's bond is hereby reversed.

Affirmed in part; reversed in part.

WEBBER, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

The jury was not instructed that it had to find that defendant passed the check with the intent to defraud. The majority rightly concludes that this is error, and I agree. However, I cannot reach the conclusion, as does the majority, that the jury made a finding of intent to defraud. 91 Ill. App. 3d 26, 32.

I agree with the majority that a properly instructed jury could have found from the evidence presented that the defendant committed the offense charged. However, I do not consider that the evidence precluded an acquittal, based upon want of proof beyond a reasonable doubt of defendant's intent to defraud. The inquiry here is not whether the jury *could* have found him guilty, it is whether they *could only* have found him guilty. If it is possible that a properly instructed jury could acquit, then, when we decide that a jury was not properly instructed, we must reverse and remand for a new trial.

The majority argues that defendant "clearly issued a bad check intending to overcome a valid garageman's lien in favor of Mitchell. See Ill. Rev. Stat. 1979, ch. 82, pars. 40, 72a." (91 Ill. App. 3d 26, 29.) The majority creates this argument itself, as it was not presented by either party. I note that under the first statutory provision cited, the lien may be possessory or nonpossessory; in other words, the garageman is not defrauded of his lien if defendant induces him to release physical possession of the automobile. Under the second provision cited, the lien is a possessory one. However, case law holds that "the mechanic's lien in paragraph 47(a) survives the mechanic's surrender of actual possession of the specified chattel in return for the owner's check until the draft is honored." (*Leavitt v. Charles R. Hearn, Inc.* (1974), 19 Ill. App. 3d 980, 984, 312 N.E.2d 806, 809.) Mitchell thus did not lose his lien, could not have lost his lien, and defendant could not have been defrauding him, or intending to defraud him. (All of this even assumes that any chancellor would have enforced a lien in favor of this apparently overreaching mechanic in the first instance.)

The majority misapprehends the testimony of Mitchell. I agree that Mitchell stated that he could not recall telling the defendant that he would not get his car back until he paid for repairs. But here is his full statement on this point in response to an inquiry:

"I am sure I probably said that [he wasn't going to get his car] as a standard to anybody. He didn't object. I can't say that I did. I don't know if I did or not."

From this statement, and other evidence, a jury could have found that defendant was merely attempting to retrieve his property as best he could. I agree that his conduct is not to be condoned. However, it was still for the jury to determine whether or not defendant had the requisite intent. Without that intent there is no offense.