THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ROBERT E. SHEPARD, Defendant-Appellant.

Fourth District   No. 4—88—0820

Opinion filed February 1, 1990.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle,

Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

On July 26, 1988, a jury sitting in the circuit court of Macon County found defendant Robert Shepard guilty of committing three acts of deceptive practices with a prior conviction in violation of section 17—1(B)(d) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 17—1(B)(d)). He was subsequently sentenced to three concurrent three-year terms of imprisonment. He now appeals, alleging: (1) he was not proved guilty beyond a reasonable doubt; (2) he was denied equal protection of the law; and (3) he was denied a fair trial due to the admission of evidence of other crimes. We disagree and affirm.

On November 8, 1987, defendant delivered a personal check to the Fairview Plaza Kroger Store drawn on the First National Bank of Decatur (National) in the amount of $50 to pay for merchandise. On November 11, he delivered another check to that store drawn on the Mutual Home and Savings Association (Mutual) in the amount of $50 in exchange for currency. Also, on November 11, he delivered a $50 check drawn on Mutual to the North Water Street Kroger store in exchange for cash. In each case the check was presented twice to its respective financial institution and there were insufficient funds to pay for it.

Defendant's checking account records at Mutual for the periods ending October 22, November 22, and December 22 were introduced into evidence. These established that this account was active. Defendant began writing insufficient funds checks around November 2. By the end of that month he had a balance of of $2.23, with $84 of pending bad check charges. Seven checks were still outstanding, all presented for payment for which insufficient funds existed. For December, he ended with a balance of $9.13 and another pending $84 of charges. At least four new checks were bounced. It was explained by Mutual's assistant manager that if defendant deposited a check which is subsequently dishonored by another institution it would still be reflected on the monthly statement. However, if a check was given them for collection it would not so appear. She remembers defendant showing her a check he had received from an accident, but she did not know if he had asked them to collect it.

Defendant's checking account records at National for the periods ending October 23, November 23, and December 23 were also submitted into evidence. These show a closing balance on October 23 of $9.51

overdrawn. The balance on November 23 was $32.51 overdrawn, with five overdrawn checks outstanding. His December balance was $5.51, with another overdrawn check outstanding. National's cashier explained that a check given them for collection only would not appear on the account statements.

On January 11, 1988, defendant was interviewed by police officer Michael Applegate. Defendant acknowledged he wrote the checks. He stated that he thought he had enough money in the accounts to cover the checks. He maintained he deposited an insurance check in the amount of $600 to $700 in one of them. However, he also stated he was robbing Peter to pay Paul. Finally, a certified copy of an earlier deceptive practice conviction in the Coles County circuit court was placed into evidence.

Defendant, 64 years of age, explained he had both checking accounts for approximately one year. He also has a Kroger check-cashing card and has been cashing checks at various Kroger stores for five or six years. He identified a large number of checks written between July 10 and November 10, which were drawn on both institutions and were cashed at a Kroger's and successfully cleared.

He admitted writing and delivering the checks in question. He believed those checks would clear. He also denied any intent to defraud Kroger. He explained he had a hit-and-run car accident in September. The other driver agreed to pay through his insurance company. Defendant received two checks, which he gave to the banks for collection. Both were dishonored, and he never got his money from the insurance company. He took one check to the company in search of payment, and they simply took it and told him to get lost.

At the time of the accident, defendant had a personal note at National for purchase of a 1981 Buick. The note was for a period of 24 months, with the last scheduled payment being April 1989. On November 6, 1989, he paid $1,137 to pay the note entirely. This was supported by the loan paperwork. He maintained that after the insurance checks were dishonored he tried to refinance this note, which was denied.

On cross-examination, he was questioned extensively concerning the bank statements and the number of his checks which were not paid during that time. Defendant also stated that, irrespective of the insurance checks, he believed he had money in the accounts to cover the checks. On rebuttal he was impeached with three prior, separate forgery convictions. Defendant was found guilty on all charges. He now appeals.

■ Defendant's initial assertion is that he was not proved guilty

beyond a reasonable doubt. A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Vriner* (1978), 74 Ill. 2d 329, 342, 385 N.E.2d 671, 676.) When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.) The relevant question is whether, if after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277.) Once a defendant has been found guilty of the charged crime, the fact finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789; *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277.

To sustain its burden in this case, the State must prove beyond a reasonable doubt that: (1) defendant issued or delivered the check in question; (2) defendant thereby obtained cash or goods from Kroger; (3) defendant knew at the time his account was insufficient to pay for said check; and (4) defendant acted with the intent to defraud. (Ill. Rev. Stat. 1987, ch. 38, par. 17—1(B)(d); *People v. Cundiff* (1973), 16 Ill. App. 3d 267, 305 N.E.2d 735.) Defendant maintains the State has failed to prove that he knew the checks would not be paid by the financial institutions and that he intended to defraud Kroger.

The last sentence of section 17—1(B)(d) provides:

> "Failure to have sufficient funds or credit with the depository when the check or other order is issued or delivered, or when such check or other order is presented for payment and dishonored on each of 2 occasions at least 7 days apart, is prima facie evidence that the offender knows that it will not be paid by the depository, and that he has the intent to defraud." (Ill. Rev. Stat. 1987, ch. 38, par. 17—1(B)(d).)

One court has held these are permissible inferences which may be drawn only when the proven facts meet the standard set forth in *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151. (*People v. Bormet* (1986), 142 Ill. App. 3d 422, 427, 491 N.E.2d 1281, 1284.) One of the requirements of *Housby* is that there exists evidence to corroborate the inference. *Housby*, 84 Ill. 2d at 424-25, 420 N.E. 2d at 154-55.

In the present case, there are sufficient facts present to corroborate this inference and support the jury's conclusion. First, these

checks in question are not isolated bad checks but are part of a series of numerous bad checks passed during that time. Defendant made a statement to the police indicating he was robbing Peter to pay Paul, which could be viewed as establishing his knowledge of the lack of funds. Further, defendant's explanation by way of his testimony is highly suspect. Defendant explained he was waiting for the proceeds of two insurance checks. At one time he indicated they were to be deposited, which is clearly false. Then he indicated they were given for collection. However, he was hazy about the time frame, indicating at one point these were given in October. He also could not remember the names of the insurance companies or what agency or person took his dishonored check and did not return it. He was even unclear as to total amounts of these checks. The jury could reasonably find defendant's explanation false, which is also sufficient corroboration to support the finding of the inference. *Housby*, 84 Ill. 2d at 430-31, 420 N.E.2d at 158.

■ Defendant insists that his testimony concerning his lack of intent and his prepayment of his installment note is sufficient evidence of his lack of knowledge and lack of intent to defraud. However, the jury is not required to accept a defendant's testimony and his was severely impeached by his prior convictions. Further, this prepayment is only one piece of evidence and is not by itself conclusive of the question. In fact, this evidence could be construed as cutting the other way. Defendant never fully explained where this sum of money came from. While his testimony is unclear and he generally insisted the insurance checks were not honored, there is a statement in which defendant indicated at least one check was cashed and he used these proceeds to pay the note. Thus, the jury could have reasonably concluded that, if the insurance checks did exist, they were honored and defendant did receive the money.

In either case, the evidence is sufficient to raise questions of fact concerning defendant's intent to defraud and his knowledge that the checks would not clear. We cannot say that, after construing all the evidence in the light most favorable to the State, no rational trier of fact could find defendant guilty beyond a reasonable doubt.

Defendant next contends the court erred by allowing admission of the monthly statements from Mutual and National since they show numerous other checks were not paid. He also complains of cross-examination concerning that point. He maintains this, in essence, established that he could have been charged with numerous other deceptive practice charges. He notes that evidence of other crimes is generally inadmissible as being too prejudicial. (*People v. Romero* (1977), 66 Ill. 2d

325, 330, 362 N.E.2d 288, 290.) He believes the fact he had other possible pending charges for the same conduct prejudiced the jury and denied him a fair trial. Defendant's argument is without merit.

Initially, we observe defendant invited the cross-examination concerning the other bad checks. Prior to defendant's testimony, the State made a motion *in limine* to bar defendant from introducing into evidence and testifying about over 70 checks which he wrote and the institutions did cover. When the court denied the motion, it advised defendant this testimony would open the door to examination concerning a number of dishonored checks. Defendant acknowledged this and yet proceeded. It is axiomatic that an accused cannot complain of error acquiesced in or invited by him. *People v. Riley* (1964), 31 Ill. 2d 490, 496, 202 N.E.2d 531, 534; *People v. Harris* (1982), 104 Ill. App. 3d 833, 839, 433 N.E.2d 343, 347-48.

Further, we find no error exists. While generally evidence of other crimes is inadmissible if relevant to merely establish the defendant's propensity to commit a crime, it is admissible if it is relevant for any other purpose. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821, 823-24.) Some such valid purposes are to prove *modus operandi*, intent, identity, motive, or absence of mistake. *People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489, 492-93.

In the case at bar, the State was required to prove that at the time the checks were passed defendant knew they were not good and he acted with an intent to defraud and, in fact, it presented evidence on these points. Defendant denied any such knowledge or intent. The fact that during this time and subsequently defendant has issued a large number of bad checks and that his accounts have a low or negative balance is highly probative to his knowledge of the status of his accounts. It is similarly pertinent to the question whether the charged checks were dishonored due to a mistaken belief on his part or whether defendant intended to defraud the people to whom he issued these checks. Thus, it is clear this evidence is highly relevant, not only for impeachment purposes, but also to assist the trier of fact in establishing defendant's state of mind at the time the checks were passed.

Defendant's final argument is that he was denied equal protection of the law. He observes that the court admitted into evidence his prior conviction of deceptive practices as an element of the offenses necessary to increase them from a misdemeanor to a felony. He notes that the legislature has (earlier) amended other sections in which misdemeanors are enhanced by previous convictions to felonies, by providing that the prior conviction is not an element of the offense and is not to be disclosed to the jury. (See Ill. Rev. Stat. 1987, ch. 38, pars. 16–

1(e)(2), 16A—10(2), 16—5(c), 11—15(b), 11—14(b), 11—17(b), 11—18(b), 11—19(b).) He maintains the fact he is not treated similarly denies him equal protection.

■ The equal protection clause requires persons who are similarly situated be treated equally. (*People v. Petro* (1989), 179 Ill. App. 3d 1018, 1021, 535 N.E.2d 97, 99.) The clause comes into play only when the law lays an unequal hand on those who have committed intrinsically the same quality of offense and penalizes one and not the other. (*People v. Bradley* (1980), 79 Ill. 2d 410, 416, 403 N.E.2d 1029, 1031.) Those contesting the statute's validity have the burden of showing its invalidity. *Petro*, 179 Ill. App. 3d at 1021, 535 N.E.2d at 99.

■ Here we fail to see the prohibited dissimilar treatment which prejudices defendant. Defendant's theory is that the fact his prior conviction is treated as an element of the offense and is presented to the trier of fact prejudices him because a jury is liable to convict him based on the prior conviction. He notes that in the other situations, the prior conviction is not made known to the trier of fact but is introduced at sentencing.

However, defendant's focus is misplaced. While the procedures imposed in each case are different, there is no dissimilar treatment of a constitutional nature. In each case, a defendant with a prior conviction can have a misdemeanor for conduct comparable to the prior enhanced to a felony. Thus, similarly situated defendants are treated similarly.

Even if we were to consider the different procedures employed in proving the prior convictions, a different result would not be required. Here, the jury was strictly admonished by the court at the time it advised them of the prior conviction that this was to be considered solely for this one element and not to be considered for any propensity toward similar conduct by defendant or any other purpose. There was also a jury instruction indicating that the prior convictions were not to be considered as evidence of defendant's guilt. This is sufficient to remove any possible improper taint from introduction of the prior conviction. Since the different procedures do not penalize this defendant over others charged under the other sections, there is no equal protection problem.

Affirmed.

SPITZ and McCULLOUGH, JJ., concur.