THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CAROL BUTCHER, Defendant-Appellant.

Second District    No. 2—92—1255

Opinion filed March 4, 1994.

G. Joseph Weller, Steven E. Wiltgen, and Kim M. DeWitt, all of State Appellate Defender's Office, of Elgin, for appellant.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

The defendant, Carol. Butcher, was charged by information on September 14, 1990, with theft (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(2) (now 720 ILCS 5/16—1(a)(2) (West 1992))) and deceptive practices (Ill. Rev. Stat. 1989, ch. 38, par. 17—1(B)(d) (now 720 ILCS 5/17—1(B)(d) (West 1992))) for buying a computer with a subsequently dishonored check. Following a bench trial, the defendant was found not guilty of theft but guilty of deceptive practices. She was sentenced to 30 months of probation and 200 hours of community service. This appeal followed, and we affirm.

The defendant's sole contention on appeal is that she was not proved guilty beyond a reasonable doubt. The standard for reviewing such a claim is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Smith* (1992), 149 Ill. 2d 558, 565; *People v. Collins* (1985), 106 Ill. 2d 237, 261.) The reviewing court must not substitute its

judgment for that of the trier of fact, particularly as to matters of credibility and the weight to be given disputed evidence. *People v. Herrett* (1990), 137 Ill. 2d 195, 206.

We are satisfied that there was sufficient evidence from which the trial judge, as the trier of fact, could rationally find the defendant guilty of deceptive practices beyond a reasonable doubt.

Greg Parker testified for the State that he conducted a court-ordered receivership auction for Dunning's Auction Service on May 19, 1990, during which the defendant was the successful bidder on a computer.

The defendant tendered to Dunning's a check in the amount of $2,982 for the computer, and the check was deposited in the firm's bank on May 21, 1990, the first business day following the Saturday auction. The check was returned unpaid for lack of sufficient funds. Parker said he redeposited the check a second time, and again it was dishonored. Parker said he sent the defendant a certified letter regarding the returned check. He said the defendant called him on June 14, 1990, and explained that her check was dishonored because one of her clients had given her a bad check, which resulted in her business account having insufficient funds to cover the check for the computer. Parker said the defendant asked if she could return the computer, and he told her that he could only take the computer back on reconsignment. He told the defendant that he could not guarantee what price she might get for the computer on reauction. The computer was not returned to Dunning's.

David Franzen, an official of Harris Bank in Roselle, testified that the computer check was written against an account held by the defendant under the business name of CCSI. The State introduced a copy of the defendant's bank statement for May 1990, showing that from May 18 through the end of the month the defendant's CCSI account had insufficient funds to cover the computer check. The statement indicated that the defendant made deposits to the CCSI account on May 19, 21, 22 and 23, but the account was still $580 short of the amount needed to cover the computer check.

Franzen said his bank received a stop-payment order for the computer check from the defendant on May 26. Franzen said the reason stated for the stop payment was that the merchandise had been returned.

The defendant testified that on the day of the auction she knew that she did not have sufficient funds in her business account to cover the check she wrote for the computer, but she denied that she intended to defraud Dunning's. She said that she intended to make sufficient deposits to her CCSI account to cover the check. She said

that she received a check for $636 from a client, Cinco, which was very slow in paying its bills to her. She decided not to deposit that check into her CCSI account because she suspected it might not be good, and she wanted to avoid service charges. She said she called Cinco's bank and learned that the check was not good.

The defendant put a stop-payment order on the Dunning's check because she knew it would only be returned unpaid a second time. She said she decided to go to Cinco to get her $636 payment. She said she communicated several times with Dunning's by telephone and mail concerning the computer check. She said she called Parker twice to discuss the computer check and offered to return the computer. She said he told her that all sales were final and that he only could take the computer back on reconsignment. Parker said she called him just once. The defendant said she would have returned the computer if they would have taken it back.

The defendant said that she was unable to cover the computer check because she experienced personal, marital and financial difficulties. On cross-examination, she admitted that she had funds from other nonbusiness sources which she deposited into other accounts during the time the Dunning's check was outstanding.

Also on cross-examination, the defendant said she did not receive a copy of the conditions of the auction sale prior to bidding on the computer and said that the auction house announced that all sales were subject to final approval by the receivership judge. Parker testified that the terms of the auction were posted throughout the auction facility and that bidders received copies of the terms when they registered to bid. He could not recall if the terms included a proviso that all sales were final.

Also on cross-examination, the defendant said she picked up the computer the week following the auction, *after* she learned that her check to Dunning's had been returned unpaid. She said she stopped payment on the check two days after taking possession of the computer, did not return the computer, and never tendered another check for its payment. On redirect examination, the defendant said she picked up the computer *before* learning that the computer check had been returned unpaid.

Following closing arguments, the judge found that the State failed to prove theft beyond a reasonable doubt but found the defendant guilty of deceptive practices.

■ To carry its burden in a prosecution for deceptive practices, the State must prove beyond a reasonable doubt that: (1) the defendant made, drew, issued or delivered a check, draft or order for payment; (2) the defendant obtained money or property in return; (3)

the defendant knew at the time he or she tendered the check that there were insufficient funds in the account to pay the check or draft; and (4) the defendant acted with the intent to defraud. *People v. Bormet* (1986), 142 Ill. App. 3d 422, 424-25.

The deceptive practices statute provides:

> "Failure to have sufficient funds or credit with the depository when the check or other order is issued or delivered, or when such check or other order is presented for payment and dishonored on each of 2 occasions at least 7 days apart, is *prima facie* evidence that the offender *knows that it will not be paid by the depository, and that he has the intent to defraud.*" (Emphasis added.) Ill. Rev. Stat. 1989, ch. 38, par. 17—1(B)(d) (now 720 ILCS 5/17—1(B)(d) (West 1992)).

A conviction of deceptive practices requires that the defendant had the specific intent to defraud at the time he or she tendered the dishonored check or instrument. (*Bormet*, 142 Ill. App. 3d at 426.) The requisite intent is defined in the deceptive practices statute:

> "To act with the 'intent to defraud' means to act wilfully, and with the specific intent to deceive or cheat, for the purpose of causing financial loss to another, or to bring some financial gain to oneself. It is not necessary to establish that any person was actually defrauded or deceived." Ill. Rev. Stat. 1989, ch. 38, par. 17—1(A)(iii) (now 720 ILCS 5/17—1(A)(iii) (West 1992)).

In the present matter, it was undisputed that the defendant issued a check for the computer, that she received the computer in return for the check, and that she knew when she wrote the check that she had insufficient funds in her account to cover it. Under terms of the deceptive practices statute, the State, thereby, made out a *prima facie* case of intent. However, this does not relieve the State of its burden of proving all elements of the crime beyond a reasonable doubt. (*People v. Sumner* (1982), 107 Ill. App. 3d 368, 371.) "[O]nce the defendant presents a reasonable, probable defense, the fundamental presumption of innocence until proven guilty precludes the trier of fact from simply ignoring the exculpatory testimony." *Sumner*, 107 Ill. App. 3d at 371.

The court in *Bormet* determined that, under the deceptive practices statute, the State may not rely entirely on the statutory inference of intent but must bolster that *prima facie* showing with some corroborating evidence. (*Bormet*, 142 Ill. App. 3d at 427.) This approach was followed by *People v. Shepard* (1990), 193 Ill. App. 3d 910, 914-15. The ultimate question of intent to defraud is for the trier of fact to decide after considering all of the circumstances of the case. *People v. Lundblade* (1981), 95 Ill. App. 3d 474, 478.

In the present matter, the trial court could reasonably conclude

that the defendant's explanation of why she tendered an invalid check was unconvincing. The defendant admitted that she never tendered a valid check to Dunning's. She never returned the computer, and her explanation for not doing so—that Dunning's would only take it back on reconsignment—was not so compelling that the trial court was bound to accept it as proof that she lacked intent to defraud.

Further, the defendant admitted that, during the time her check to Dunning's was outstanding, she deposited money into other bank accounts. This could be reasonably interpreted by the trial court as intent to defraud. Additionally, the defendant's testimony concerning efforts to collect $636 from Cinco did not prove she lacked fraudulent intent when she wrote the computer check.

Finally, the court reasonably could have concluded that the defendant lacked credibility. She appeared to contradict herself on the question of whether she knew her check to Dunning's was invalid before or after she took possession of the computer. On cross-examination, the defendant said she picked up the computer *after* she learned that her check was no good. On redirect examination, she said she picked up the computer *before* she learned the check was returned unpaid. In either case, she knew when she wrote the check that she had insufficient funds to cover it, so there is a clear inference that she knew it would be returned unpaid. See Ill. Rev. Stat. 1989, ch. 38, par. 17—1(B)(d) (now 720 ILCS 5/17—1(B)(d) (West 1992)).

In *People v. Lundblade*, which both the defendant and State cite as supporting their positions, the appellate court affirmed a deceptive practices conviction after determining that the defendant knew he had insufficient funds at the time he issued the check in question, and there was "substantial proof which negated his claim that he expected to get credit from the bank." (*Lundblade*, 95 Ill. App. 3d at 478.) Additionally, the defendant's account was overdrawn for a month and a half prior to making the check in question with no deposit during that time. *Lundblade*, 95 Ill. App. 3d at 478.

We believe the facts of *Lundblade* are similar to those in the present matter. Here the defendant knew she tendered a bad check, and, as we have already noted, there was "substantial proof" to negate the defendant's claim that she never intended to defraud Dunning's.

The trial court's finding that the defendant had the requisite intent for deceptive practice was not irrational. Viewing the evidence in the light most favorable to the State, the defendant was proved guilty beyond a reasonable doubt.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

INGLIS, P.J., and GEIGER, J., concur.